## MATTER OF TAERGHODSI

## In Deportation Proceedings

## A–22369456

*Decided by Board June 28, 1977*

(1) Respondent was arrested by the Houston police for obstructing traffic on May 1, 1976. When they ascertained he was an alien, they notified the Service which took him into custody May 2, 1976. In his possession was an identification card issued by the Marriott Corporation indicating his participation in an Employee Health and Welfare Benefits Plan administered by that corporation. Deportation proceedings were brought under section 241(a)(9) of the Immigration and Nationality Act on the ground that respondent violated his nonimmigrant status by accepting employment without the prior permission of the Service required by 8 C.F.R. 214.2(f)(6). Based on the identification card and the respondent's statements made at the hearing, the immigration judge found him deportable on the grounds alleged in the orders to show cause.

(2) Under 8 C.F.R. 242.8(a) an immigration judge may, subject to the requirements of procedural due process, consolidate the cases of different respondents if he deems it necessary to promote administrative efficiency. Respondent's hearing was held during three different hearings interspersed with the cases of four other respondents charged with deportability on unrelated grounds. However, after denial of several preliminary motions, all connection between respondent here and the other respondents ceased. Nevertheless, there was no severance of respondent's case.

(3) While severance may have been warranted by the dissolution of the nexus between the cases, where respondent was afforded an opportunity to litigate his case and the immigration judge clearly culled the essential facts and issues pertinent to respondent's case from the record, respondent was not prejudiced by the failure to sever.

(4) Where deportability is established on the basis of evidence unrelated to the allegedly unlawful arrest, denial of a motion to suppress evidence does not constitute reversible error even if that evidence was seized unlawfully. Since respondent admitted his employment at the hearing, and that admission was itself, sufficient to establish deportability, respondent's deportability is established by untainted, clear, convincing and unequivocal evidence.

CHARGE:

Order: Act of 1952—Section 241(a)(9) [8 U.S.C. 1251(a)(9)]—Nonimmigrant—failed to maintain status

ON BEHALF OF RESPONDENT: Nancy Hormachea, Esquire
815 Hawthorne
Houston, Texas 77006

BY: Milhollan, Chairman; Wilson, Maniatis, Appleman, and Maguire, Board Members

In a decision dated December 9, 1976, the immigration judge found the respondent deportable under section 241(a)(9) of the Immigration and Nationality Act on the ground that he had failed to maintain his nonimmigrant student status. The respondent was granted voluntary departure in lieu of deportation. The respondent appeals from the finding of deportability, arguing that it was based on evidence unlawfully seized and which should have been excluded from consideration at the hearing. The appeal will be dismissed.

The respondent, a native and citizen of Iran, was admitted to the United States as a nonimmigrant student on December 31, 1970. On May 1, 1976, he was arrested by the Houston police in the aftermath of a political demonstration, apparently on the charge of obstructing traffic.[1] After transportation to the station house for booking, the respondent's personal effects were confiscated. Upon ascertaining that the respondent was an alien and that he was unable to verify his alien status, the Immigration and Naturalization Service was notified.

On May 2, 1976, the respondent was remanded to the custody of Service officers. His personal effects, confiscated at the time of his incarceration, were also turned over to the Service officers. Among these effects was a document issued by the Marriott Corporation, bearing the respondent's name, and relating his participation in an "Employee Health and Welfare Benefits Plan" administered by that corporation.

An Order to Show Cause was issued by the Service on May 3, 1976, charging the respondent with deportability under section 241(a)(9) of the Act. Specifically, it was alleged that the respondent had violated his nonimmigrant status by accepting employment without the advance permission of the Service, as required by 8 C.F.R. 214.2(f)(6).

Hearings were held before the immigration judge on June 16, October 27, and November 15, 1976. At these hearings, the respondent's case was heard in conjunction with the cases of four other aliens, all of whom had been arrested at the May 1st political demonstration.[2] The five respondents were represented by the same counsel. The immigration judge denied the motion to suppress the identification card signed by the Houston police. He relied upon this card and statements made by the respondent at the hearing to find the respondent deportable under section 241(a)(9) by clear, convincing, and unequivocal evidence.

I

We are faced at the outset with some question as to the procedure

---

[1] No evidence of prosecution on this charge appears in the record.

[2] A fourth hearing was held on February 17, 1977. However, the immigration judge had rendered his decision in the respondent's case on December 13, 1976, and this hearing did not concern him.

employed by the immigration judge in this case. The respondent's case was heard during three different hearings, interspersed with the cases of four other respondents charged with deportability on unrelated grounds.[3] However, after two preliminary motions, made in conjunction with two or more of the other respondents,[4] were denied by the immigration judge, all nexus between the respondent's case and the cases of the other four respondents dissolved.[5] The respondent's case was nevertheless not severed from those of the other four respondents. We feel that it is appropriate at this time to discuss the considerations which should govern the immigration judge's decision whether to consolidate or hear separately the cases of different alien respondents.

Section 242(b) of the Immigration and Nationality Act grants wide latitude to the Attorney General to determine the nature of deportation proceedings, mandating only that certain procedures essential to procedural due process be followed by the immigration judge. See generally *Kwong Hai Chew* v. *Colding*, 344 U.S. 590 (1953); *Shaughnessy* v. *United States*, 345 U.S. 206 (1953).

The regulations issued by the Attorney General do not specifically address the issue of joinder or consolidation of proceedings. However, 8 C.F.R. 242.8(a) specifies that it is within the power of the immigration judge "to take any . . . action consistent with applicable provisions of law and regulation as may be appropriate to the disposition of the case." We interpret this provision to allow the immigration judge, subject to the requirements of procedural due process, to consolidate the cases of

---

[3] One respondent was charged with failing to depart the United States after the expiration of his student visa. Two others were charged with transferring to another school without prior authorization from the Immigration and Naturalization Service. The case of a fifth respondent was severed from those of the other four when it became apparent to the immigration judge that he might be eligible for suspension of deportation under section 244(a)(1) of the Act.

[4] At the outset of the hearing, two motions were made involving the respondent. The first was a motion to suppress evidence seized incident to the allegedly unlawful arrest by the Houston police on May 1, 1976. This motion was made jointly by the respondent and two other respondents. The second was a motion, made jointly by all the respondents, for discovery of all photographs, statements, and other evidence resulting from their May 1 incarceration.

[5] Three respondents, not including the respondent in this case, joined in a motion for discovery relating to the procedure employed by the Service to implement the directive contained in O.I. 214.2(f)(6). These same three respondents, again not including the respondent in this case, asserted an estoppel claim, alleging affirmative Government misconduct based upon this section. These three respondents also sought to establish that they had been the victims of selective "prosecution" by the Immigration and Naturalization Service solely on the basis of their political views. The respondent in this case joined in none of these last three legal maneuvers.

different respondents, if he deems such consolidation necessary to promote administrative efficiency.[6]

This interpretation of 8 C.F.R. 242.8(a) finds support in judicial decisions concerning the authority of a hearing officer to consolidate proceedings in other types of Federal administrative proceedings. In *Association of Massachusetts Consumers, Inc.* v. *U.S. Securities and Exchange Commission*, 516 F.2d 711 (D.C. Cir. 1975), the court stated:

> No principle of administrative law is more firmly established than that of agency control over its own calendar . . . Consolidation . . . and similar questions are housekeeping details addressed to the discretion of the agency and, due process or statutory considerations aside, are no concern of the courts. 516 F.2d at 714.

See also *City of San Antonio* v. *Civil Aeronautics Board*, 374 F.2d 326 (D.C. Cir. 1967); *Cella* v. *United States*, 208 F.2d 783 (7 Cir. 1953), cert. denied 347 U.S. 1016 (1954); Davis, *Administrative Law Treatise* and *Administrative Law for the Seventies*, §8.12.

We conclude, therefore, that it is within the power of the immigration judge to consolidate proceedings, if such consolidation does not serve to deny the respondent the right to fully and clearly litigate his claims. Necessarily, then, each case in which there has been a consolidation must be considered on its own record, with scrutiny of the respondent's opportunity at the hearing to have his case clearly presented before the immigration judge. Cf. *Williams* v. *United States*, 416 F.2d 1064, 1068 (8 Cir. 1969); *Tillman* v. *United States*, 406 F.2d 930, 934 (5 Cir. 1969).

Turning to the case before us on appeal, we find that once the jointly-made motions for suppression and discovery were denied by the immigration judge, all connection between the respondent's case and those of the other individuals at the hearing disappeared. At this point, severance of the respondent's case would have been the best course of action, both in the interests of administrative efficiency and clarification of the record for appeal, and in the interests of insuring full and proper presentation and consideration of the respondent's case by the immigration judge.

However, after a review of the voluminous record, we find that the respondent was in fact afforded a full opportunity to litigate his case, and that the immigration judge's opinion clearly and accurately culls the

---

[6] We thus conclude that the joinder and consolidation rules applicable in Federal civil and criminal judicial proceedings do not strictly obtain in Federal deportation proceedings. See *Fed. Rules of Civil Procedure*, Rules 19, 20, and 21; *Fed. Rules of Criminal Procedure*, Rule 8 (b). However, the dual policies behind the particular rules adopted in Federal civil and criminal proceedings, the promotion of administrative efficiency in a manner consistent with the safeguarding of the litigants' rights, must obviously serve as our guide in devising standards to govern consolidation in Federal deportation proceedings. See Davis, Administrative Law Treatise, and *Administrative Law for the Seventies*, §8.12.

essential facts and issues from the record. In this conclusion, we are influenced by the fact that the respondent's case presented relatively simple issues of law and fact. Thus, while consolidation of dissimilar cases is not to be encouraged, and care must always be taken to insure full protection of the respondent's due process right to a full and fair hearing, we find that the respondent was not prejudiced by the immigration judge's failure to sever in this case.

## II

The respondent argues on appeal that his motion to suppress was improperly denied by the immigration judge, and that we should therefore terminate proceedings on the ground that the finding of deportability rests exclusively upon evidence tainted by the allegedly unlawful arrest by the Houston police. For the reasons that follow, this claim is without merit.

In his motion to suppress, the respondent sought exclusion of the employee identification card seized from him by the Houston police incident to his May 1, 1976, arrest. He argued that this arrest was unlawful, and that evidence seized as a result thereof was therefore inadmissible against him in a subsequent deportation proceeding. The immigration judge denied the respondent's motion on the ground that evidence seized by a state police officer, even if incident to an illegal arrest, was nonetheless admissible in a Federal deportation proceeding.

We need not address the argument that the immigration judge should have excluded this evidence from the hearing (but see *United States v. Janis*, 428 U.S. 433 (1976)) for we find that the respondent testified at the hearing to his unauthorized employment (Tr. p. 28, Hearing of June 16, 1976).[7] It is settled that the mere fact of an illegal arrest is not fatal to the initiation of subsequent deportation proceedings. *U.S. ex rel. Bilokumsky v. Tod*, 263 U.S. 145 (1923); *Avila-Gallegos v. INS*, 525 F.2d 666 (2 Cir. 1975). Rather, when deportability can be established on the basis of evidence unrelated to the allegedly unlawful arrest, failure to grant a motion to suppress, even if the evidence was in fact seized unlawfully, does not constitute reversible error. Since the respondent admitted his past employment at the hearing, and since this admission

---

[7] The respondent initially asserted a right to refuse to testify under the Fifth Amendment to the United States Constitution. This claim was properly rejected by the immigration judge. A respondent may refuse to testify in a deportation proceeding on the basis of the Fifth Amendment only when a particular question relates to activity which is potentially incriminating. See *Chavez-Raya v. INS*, 519 F.2d 397 (7 Cir. 1975). There is no criminal penalty which attaches to unauthorized employment in the United States. The respondent, therefore, had no valid basis for refusing to testify, and the admission of his testimony, when he chose to comply with the immigration judge's direction, is not subject to attack.

by itself was sufficient to establish deportability under section 241(a)(9), we find that deportability was established by clear, convincing, and unequivocal evidence not subject to any potential taint. We shall therefore dismiss the appeal.

ORDER: The appeal is dismissed.

FURTHER ORDER: The respondent is permitted to depart from the United States voluntarily within 30 days from the date of this order or any extension beyond that time as may be granted by the District Director; and in the event of failure so to depart, the respondent shall be deported as provided in the immigration judge's order.